UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>NICHOLAS STEPHEN WALLACE,<br>PASCALE MARIE WALLACE,<br><br>    Debtors | Chapter 11 Subchapter V<br><br>Bankruptcy No. 24-00315 |

### Opinion and Order on Creditor's Motion for Relief from Stay and Debtors' Motions to Acknowledge Title 48, Motion to Recuse, and Motion for Evidentiary Hearing

The matters before the Court are Creditor MidWestOne's ("MWO") Motion for Relief from Stay or in the Alternative, for Adequate Protection Payments (Doc. 26), Debtors' Motion to Acknowledge Title 48 CFR International Commercial Affidavit Presented as Letter of Rogatory (Doc. 77), Debtors' Motion for Another Evidentiary Hearing by Oral Testimony of Fact Witness Pursuant to LR. 9073-2 (Doc. 99), Debtors' Motion to Strike "MidWestOne Bank's Combined Objection to Debtors' Motion to Acknowledge Title 48 CFR and Motion to Recuse" (Doc. 103), and Debtors' Subpoena Request as discussed in the Court's scheduling order (Doc. 104).

Debtors are pro se. Christopher Loftus represents MWO. Claire Davison appeared on behalf of the United States Trustee ("UST"). Craig Knickrehm represents Agrifund, LLC. The Court held a preliminary telephonic hearing on June

7, 2024 and an in-court evidentiary hearing on July 1, 2024. The Court held a final status hearing on July 17, 2024, and took the matters under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### I. BACKGROUND AND STATEMENT OF THE CASE

On April 10, 2024, Debtors voluntarily filed their bankruptcy petition under Chapter 11 with a small business designation. Doc. 1. Debtors later amended their petition and elected to proceed under Chapter 11 Subchapter V. Doc. 36. On May 16, 2024, MWO filed its Motion for Relief from Stay (Doc. 26), requesting the Court lift the automatic stay as to MWO's collateral for several loans that Debtors had not paid for over five months. Debtors filed their objection (Doc. 37) and the Court held the preliminary telephonic hearing on June 7, 2024. The Court set an evidentiary hearing for July 1, 2024. Debtors filed a Motion to Acknowledge Title 48 CFR International Commercial Affidavit Presented as Letter of Rogatory (Doc. 77) a few days prior to the evidentiary hearing. The Court set it for hearing on July 1, 2024 as well. At the hearing, the Court took evidence on the Motion for Relief from Stay and ordered MWO to file its response to Debtors' Motion to Acknowledge, which they did. Doc. 98. The Court set a follow-up telephonic hearing on these matters for July 17, 2024. Debtors then filed a motion requesting the Court to set another evidentiary hearing on the Motion for Relief from Stay. Doc. 99. MWO resisted. Doc. 102. On July 11, 2024, Debtors requested that the Clerk issue a subpoena on

2

their behalf. The Court set all the additional matters for the telephonic hearing on July 17, 2024.

At the July 17 hearing, the parties reiterated their positions set out at the previous hearing and their filed papers. The Court took all these matters under advisement. For the following reasons, the Court grants MWO's Motion for Relief from Stay (Doc. 26), denies Debtors' Motion for Another Evidentiary Hearing (Doc. 99), denies Debtors' Motion to Acknowledge Title 48 CFR International Commercial Affidavit Presented as Letter of Rogatory (Doc. 77), and quashes Debtors' Subpoena Request as moot.

## I. FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DISCUSSION

Debtor Nicholas Wallace owns two parcels of real property in Benton County, Iowa, legally described as follows:

> Parcel C in the Southeast ¼ of the Southwest ¼ of Section 36, Township 83 North, Range 12, West of the 5th P.M., per survey recorded in Book 14, Page 315.

(Hereinafter "Parcel C").

> Parcel B in the Southeast Quarter (SE ¼) of the Southwest Quarter (SW ¼) of Section 36, Township 83 North, Range 12, West of the 5th P.M., per survey dated January 14, 2010, and recorded in Book 10 at Page 279, Office of the Benton County Recorder.

(Hereinafter "Parcel B").

Debtors Nicholas and Pascale Wallace own another tract of real property in Benton County, Iowa, legally described as follows:

> Tract B in the South One-Half (S ½) of the Southwest Quarter (SW ¼) of Section Thirty-Six (36), Township Eight-Three (83) North, Range Twelve (12), West of the 5th P.M., per survey recorded in Book 10, Page 279.

(Hereinafter "Tract B").

Debtors started borrowing money from MWO in 2010 that is now documented by an Agricultural Security Agreement (the "Security Agreement") and four different promissory notes. In 2017 as part of a consolidation effort, the Debtors jointly executed and delivered to the Bank the Security Agreement that grants the Bank a security interest in the following assets of the Debtors:

> All Equipment, Farm Products, General Intangibles, Accounts, Inventory, Investment Property, Fixtures, Chattel Paper, Instruments, Deposit Accounts, Warehouse Receipts, Letters of Credit, Documents of Title, Bills of Lading, Intellectual Property rights, and Documents;
>
> Together with all substitutions, replacements, proceeds or products of the foregoing.

(Hereinafter, the "Personal Property").

Note 1 was jointly executed and delivered to the Bank for a loan of $575,500.00 and is secured by Parcel C through a mortgage. See MWO Ex. 2. Note 2 was executed and delivered to the Bank by Debtor Nicholas Wallace for a loan to him of $967,583.49 and is secured by Parcels C and B, and Tract B through a mortgage. See MWO Ex. 4. Note 3 was jointly executed and delivered to the Bank for a loan of $392,380.00 and is secured by Parcels C and B, and Tract B through a mortgage. See MWO Ex. 6. Note 4 was jointly executed and delivered to the Bank for a loan of $667,151.00 and is secured by Parcels C and B, and Tract B through a mortgage.

4

See MWO Ex. 8. In 2021, Debtors again consolidated multiple prior loans from MWO in the amount of $1,725,000.00 secured by Parcels C and B, and Tract B through a mortgage. See MWO Ex. 10. Debtors waived their homestead exemption as part of this consolidation. See id. at 11. Notes 2, 3, and 4 are also secured by the Security Agreement and matured in late 2023. As of June 14, 2024, Debtors owe MWO a total of $2,511,466.63.

Debtors have failed to make any payments under Notes 2, 3, and 4 for over five months. Debtors have not offered any adequate protection and have continued to use MWO's collateral since the bankruptcy filing. Debtors resisted MWO's motions by alleging fraud and appearing to contest the existence of the Debtors' debt obligations owed to MWO. See Doc. 37, ¶¶ 5–16. MWO presented evidence at the evidentiary hearing showing conclusively that Debtors owe MWO the $2,511,466.63 outlined above. Debtors offered no persuasive evidence that they did not owe the money, which was their only real defense to MWO's Motion for Relief from Stay. Debtors entirely failed to address adequate protection. Debtors instead relied mainly on their "sovereign citizen" or "pseudo-law" arguments.

**A. MWO's Motion for Relief from Stay Must Be Granted.**

The Court will address the Motion for Relief from Stay first and then turn to the other matters before it. Analysis of a Motion for Relief from Stay under § 362(d) is inherently fact intensive. Section 362(d)(1) of the Bankruptcy Code provides that:

5

> On request of a party in interest and after notice and a hearing, the court **shall** grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) **for cause**, including the **lack of adequate protection** of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1) (emphasis added). Courts in the 8th Circuit have defined cause under § 362(d)(1) as "any reason whereby a creditor is receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding." In re Timmer, 423 B.R. 870, 874 (Bankr. N.D. Iowa 2010) (citing In re Martens, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005). Here, MWO bears the burden to show that "cause" exists to lift the stay, after which the burden shifts to Debtors to demonstrate why the stay should remain in place. 11 U.S.C. §§ 362(d)(1), 362(g); In re Morales, 403 B.R. 629, 631 (Bankr. N.D. Iowa 2009).

MWO focused on the lack of adequate protection in its filings and at hearing as cause for lifting the stay. MWO offered evidence at trial that Debtors have failed to make any payments towards their loans for the last five months and have been unwilling to offer adequate protection. MWO and Debtors had previously entered into a Forbearance Agreement in 2021 in which Debtors acknowledged the money they owed to MWO and the defaults that were occurring. See MWO Ex. 13, at 2. When Notes 2, 3, and 4 reached maturity roughly six months ago, MWO and Debtors discussed extending the Forbearance Agreement. Debtors had also offered to sell

6

some property and livestock in order to keep their homestead but MWO rejected that offer. The Court gave the parties almost three weeks after the evidentiary hearing to continue negotiations. At the follow-up telephonic hearing on July 17, 2024, counsel for MWO stated that he had given his contact information to Debtors after the evidentiary hearing and indicated a willingness to negotiate. Debtors never contacted him.

"The classic 'adequate protection' for a secured debt, justifying continuation of the stay, is the existence of an equity cushion." In re Micozzi, 1991 WL 11731156, at *5 (Bankr. S.D. Iowa Nov. 18, 1991). "'[T]he existence of an equity cushion, standing alone, can provide adequate protection.'" In re Rizotto, 2009 WL 2477232, at *4 (Bankr. D. Mont. Aug. 11, 2009) (quoting In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984)). MWO noted that another secured creditor, Farmer Mac, has priority over MWO for Tract B—valued at about $490,000. Farmer Mac has not filed a proof of claim in this case but if it did so, its position would erase any equity cushion that could possibly exist. Debtors' Personal Property, pledged through the Security Agreement, has an estimated value of $811,411 but Debtors continue to use it and decrease its value. All of Debtors' Real Estate, including Tract B, was recently appraised at approximately $1,874,000. On paper and without any further investigation of the existence and condition of the property, Debtors' collateral property has a value of $2,685,411 in total. As of June 14, 2024, the combined total

7

amount due under the Notes is $2,511,466.63.  If Farmer Mac has no claim, and all other values are assumed, there could be a small $173,944.37 cushion.

Because of the fact-intensive nature of this inquiry, courts naturally differ on exactly how much of an equity cushion is required to adequately protect a creditors' interest in pledged collateral.  In re Carter, 2012 WL 4737372, at *4 (Bankr. N.D. Iowa Oct. 3, 2012).  However, "'[c]ase law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection.'"  In re Mendoza, 111 F.3d 1264, 1272 (5th Cir.1997) (quoting In re Kost, 102 B.R. 829, 831 (Bankr. D. Wyo. 1989)); see also In re JER/Jameson Mezz Borrower II, LLC, 461 B.R. 293, 305–06 (Bankr. D. Del. 2011); In re McKillips, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (surveying adequate protection cases and finding case law agreement on a 20% equity cushion being sufficient, 11% being insufficient, and cases conflicting in the middle).  Here, at best, MWO would have roughly a 14% equity cushion.  At worst, MWO has no equity cushion due to the priority of Farmer Mac and continued depreciation of its collateral.  "[L]ack of adequate protection requires both the lack of an adequate equity cushion as well as the depreciation of the collateral."  In re Lane, 108 B.R. 6, 8–9 (Bankr. D. Mass. 1989) (finding the need for something more than a lack of an equity cushion).  Here, MWO provided evidence that Debtors continue to use MWO's collateral—the Personal Property—thus continuing to decrease its value.  MWO believes this shows there is little or no real equity cushion

8

even without considering Farmer Mac's position. MWO also persuasively points out that its claims continue to increase each day with interest and accumulating attorney fees and costs. The Court agrees that MWO has shown there is not an equity cushion here to adequately protect MWO's interests and Debtors' continued use of the collateral evidences its depreciating value. Therefore, MWO has carried its burden and shown that it is not adequately protected.

Once the creditor (MWO) has established that it is not inherently adequately protected, the burden of proof shifts to the debtor to establish how the creditor's interest will be adequately protected throughout the bankruptcy case. "The debtor must affirmatively propose the method by which it will afford adequate protection and the Court must then determine the adequacy of the debtor's proposal." In re Lilyerd, 49 B.R. 109, 116 (Bankr. D. Minn. 1985) (citations omitted); see also In re Panther Mountain Land Dev., LLC, 438 B.R. 169, 191–92 (Bankr. E.D. Ark. 2010) (Once a creditor has shown "a *prima facie* case for lack of adequate protection, . . . the burden to prove creditor is adequately protected shifts to the debtor."); In re Gilbertson Rests. LLC, 2004 WL 1724876, at *2 (Bankr. N.D. Iowa May 20, 2004) ("Debtor has the burden of establishing that [creditor] is adequately protected."). Here, Debtors have not offered any proposal of adequate protection for the Court to evaluate. In fact, Debtors have not offered any evidence on adequate protection at all. Debtors made no further attempt to negotiate with MWO after the Court gave

9

them almost three additional weeks to come up with some proposal.  Thus, Debtors entirely failed to show any factual basis for denying MWO's Motion for Relief from Stay.

Instead, Debtors offered arguments in their filings and at hearing that track those often made by "sovereign citizens" or those relying in nonsensical "pseudo-law" arguments.  While Debtors deny they are "sovereign citizens", their arguments are identical to those that are routinely made by sovereign citizens that have been repeatedly rejected by every court addressing them. See, e.g., In re Hardee, 2021 WL 1186477 (Bankr. N.D. Ga. Mar. 26, 2021) (collecting cases and ultimately rejecting the sovereign citizen arguments even when the debtor did not identify as a sovereign citizen).  Debtors argue, despite the fact they signed notes and received money from MWO, that MWO is falsely claiming to have loaned money to Debtors and MWO is attempting to unjustly enrich itself by foreclosing on the property Debtors pledged as collateral.  Doc. 37.  Debtors did not, however, deny that they borrowed the money or spent the money from MWO.  Debtors in fact made payments to MWO on the loans for years before they matured.  Debtors offered no evidence of any wrongdoing by MWO and instead relied on conclusory allegations and specious arguments.  Debtors offered no evidence of any fraud by MWO.  Debtors did question the notarization of one signature of Pascale Wallace.  She testified that she didn't recall signing some of the loan documents and she was not present for the signing in one

case where her signature was notarized. Upon cross examination, however, Pascale Wallace admitted that she granted authority to Nicholas Wallace to sign these loan and security documents for her. Thus, even if one document was improperly notarized, she does not dispute that she authorized her husband to sign for her, which is what he did. This testimony shows that she was aware of the loans and authorized him to sign her name to get them. There is nothing in the record that proves fraud on the part of MWO or that somehow Debtors do not owe the money to MWO. The record actually proves the contrary: MWO owns multiple valid Notes that Debtors knowingly signed and/or authorized and executed, secured by all of Debtors' property—real and personal—via valid mortgages and a security agreement.

Debtors have also filed a Motion for an Additional Evidentiary Hearing to put on testimony related to one of their sovereign citizen arguments. Doc. 99. The Court made it clear at both the preliminary telephonic hearing on June 7, 2024 and the July 1st evidentiary hearing that Debtors' opportunity to resist MWO's Motion for Relief from Stay and provide evidence to support their resistance would be at the hearing on July 1st. The Court does not find a need for a second evidentiary hearing. Further, the substance of the live testimony Debtors want to offer was already contained in the affidavits that were admitted at the July 1st evidentiary hearing. A second evidentiary hearing would only delay a ruling and would not offer any additional relevant evidence on the Motion for Relief from Stay. Debtors' motion for a second

evidentiary hearing is denied. Debtors' subpoena request is denied and quashed for the same reasons. The record on MWO's Motion for Relief from Stay is closed.

In sum, the Court concludes that the record before it shows unequivocally that MWO is not adequately protected and Debtors have not carried their burden to show how MWO's interest will be adequately protected. Based on these conclusions, the Court here must grant MWO's Motion for Relief from Stay and allow it to pursue its rights in state court.

**B. Debtors' "Sovereign Citizen" Arguments Must Be Rejected.**

Debtors have made several arguments that have been made routinely by "sovereign citizen" groups or fall into the "pseudo-law" category. This includes the Motion to Acknowledge Title 48 CFR International Commercial Affidavit Presented as Letter of Rogatory ("Motion to Acknowledge"). Doc. 77. This document, according to Debtors, shows they have "bonds" available to them from the United States Treasury that will allow them to pay off the debts to MWO. This is another argument that stems from sovereign citizen "redemptionist" theory. Under that theory, among other things, Debtors assert they have access to "bonds" from the government they can use to pay outstanding debts. See United States v. Anzaldi, 800 F.3d 872, 875 (7th Cir. 2015) ("[R]edemption theory [is a] sovereign citizen-type view which . . . holds that the federal government went bankrupt when it abandoned the gold standard in 1933 and began converting the physical bodies of its citizens

into assets against which it could sell bonds."). The theory contends—without any basis in fact or reality—that "when the United States Government 'pledged the strawman of its citizens as collateral for the country's national debt,' it created an 'exemption account' for each citizen, identified by each person's Social Security number." McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (citations omitted). Under this theory, when sovereign citizens borrow money, "their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts." Id. Debtors' arguments mirror this theory almost word for word. MWO objected, stating that Debtors "cite a laundry list of federal statutes and regulations, none of which pertain to the instant bankruptcy proceeding or the United States Bankruptcy Code." Doc. 98. Debtors then filed a Motion to Strike "MidWestOne Bank's Combined Objection to Debtors' Motion to Acknowledge Title 48 CFR and Motion to Recuse" that argues MWO is attempting to entice the Court "to engage in embezzlement of court funds" by objecting to their Motion. Doc. 103. MWO objected to Debtors' Motion to Strike and argued that Debtors had not met the high legal standard to have a pleading stricken. Doc. 111. The Court agrees with MWO and sustains both of its objections.

The arguments Debtors make in their Motion to Acknowledge are irrelevant, inapplicable to a bankruptcy proceeding, incorrect statements of law and fact, or

simply a wishful view of how the commercial world works.  See generally Doc. 77.  The Court explicitly told Debtors that it would not spend much time on its "sovereign citizen" type arguments—which are most of their arguments—because courts across the country have routinely rejected similar arguments because they are contrary to the applicable law.  See, e.g., United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("These [sovereign citizen] theories should be rejected summarily, however they are presented.").  It is in this context that the Court reminded Debtors that this bankruptcy case—which they voluntarily filed—is governed by the Bankruptcy Code and not other parts of the United States Code that are inconsistent with it.  The Court then told Debtors that it was concerned that Debtors were proceeding with unwinnable and irrelevant arguments in the face of proceedings where they would likely lose everything they were allegedly trying to protect.  Debtors have property, a business, and a homestead where they live with their family—all of which they pledged as collateral for loans.  The Court urged them to get a lawyer and to try to negotiate a deal with MWO.  They decided instead to move forward with their frivolous theories and demand a ruling on them.  See, e.g., In re Trainor, 87 F.3d 1322 (9th Cir. 1996) (characterizing the sovereign citizen arguments as "frivolous" and affirming the bankruptcy court's adversary proceeding dismissal).

     For example, Debtors argued at hearing that the Court has no jurisdiction.  But, as the Court pointed out, the Debtors themselves voluntarily filed this

14

bankruptcy case in this Bankruptcy Court and invoked the Court's powers—powers that include jurisdiction over this bankruptcy case. United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts."). Debtors also claim that all United States attorneys have pledged an allegiance to the British crown, making them "aliens" under U.S. Code and thereby removing jurisdiction of the present proceeding to that of international and admiralty law. Doc. 77; see also Colin McRoberts, *Tinfoil Hats and Powdered Wigs: Thoughts on Pseudolaw*, 58 WASHBURN L.J. 637, 638 (2019) (describing sovereign citizen arguments including "the myth that all American lawyers swear treasonous secret oaths of allegiance to the British crown."). Section 1334(e) of Title 28 provides that, upon the filing of a bankruptcy petition, the district court, and by referral the bankruptcy court, has exclusive jurisdiction of all property of the debtor and all property of the estate. See 28 U.S.C. § 1334(e); see also Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 362 (2006) ("Bankruptcy jurisdiction, at its core, is *in rem*."). Bankruptcy courts have original and exclusive jurisdiction over all cases under Title 11 and original, but not exclusive, jurisdiction over all civil proceedings "arising under" the Bankruptcy Code, "arising in" the Bankruptcy Code, or "related to" a case under title 11. See 28 U.S.C. § 1334(b). Controversies "arise in" title 11 when they "have no existence outside of the

15

bankruptcy." In re Air Cargo, Inc., 401 B.R. 178, 185 (Bankr. D. Md. 2008) (cleaned up); see also In re A.H. Robins Co., Inc., 86 F.3d 364 (4th Cir. 1996) (a motion for relief from stay is a proceeding arising in title 11); In re Gruntz, 202 F.3d 1074 (9th Cir. 2000) (orders modifying or annulling the automatic stay are core proceedings arising in and under the Bankruptcy Code). The Court clearly has jurisdiction here.

Debtors then asked the Court to look carefully into their arguments about the "bonds" they were prepared to offer in full payment of their obligations to the bank. The Court has reviewed their documents and arguments and concludes they do not provide Debtors the relief they assert. In sum, Debtors wrongly believe that they can borrow money from MWO, spend that money on goods and services, and issue these "bonds" that will direct the United States Treasury to pay off their debts and discharge their obligations to MWO. See generally McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201 (D. Conn. 2010); United States v. Anzaldi, 800 F.3d 872 (7th Cir. 2015). This idea is not only too good to be true—it also has no logic or connection to the commercial reality in which we live. Debtors cannot offer MWO repayment with these "bonds" just as Debtors could not walk in the grocery store and force the grocer to take them in exchange for the groceries he puts in his cart. This idea that they have special "bonds" available to them to completely discharge their debts is nothing more than fantasy or woefully misguided hope. This argument has been specifically rejected by other courts. McLaughlin v. CitiMortgage, Inc.,

16

726 F. Supp. 2d 201 (D. Conn. 2010) (rejecting the "redemptionist" arguments, noting that the Court "has serious doubts that this lawsuit was borne of sincere convictions" and considering sanction against movant for making these arguments); In re Elmore, 556 B.R. 224, 232 (Bankr. D.S.C. 2016) (collecting cases that rejected "redemptionist" legal arguments).

This style of legal argument Debtors attempt to use here has been generally branded as that of the "sovereign citizen movement" or "pseudolaw." Caesar Kalinowski, *A Legal Response to the Sovereign Citizen Movement*, 80 MONT. L. REV. 153, 154 (2019); see also Colin McRoberts, *Tinfoil Hats and Powdered Wigs: Thoughts on Pseudolaw*, 58 WASHBURN L.J. 637, 637 (2019) ("[Pseudolaw] flows from a hyperactive network of incompetent legal scholars generating futile strategies for navigating the legal system."). The Court will not give further credence to these arguments by parsing through the Motion to Acknowledge. They have no legal validity. "The conspiracy and legal revisionist theories of 'sovereign citizens' are not established law . . . anywhere in this country's valid legal system." Paul v. New York, 2013 WL 5973138, at *3 (E.D.N.Y. 2013). "Federal courts across the country . . . have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible." Tyson v. Clifford, 2018 WL 6727538, at *3 (D. Conn. 2013); see also Dioh v. Haller, 2023 WL 8877979 (D. Minn. Dec. 22, 2023) ("[T]hese

17

[sovereign citizen] arguments lack so much as an arguable basis in American law as it exists in the real world, rather than as it is fantasized in the fever swamps of the Internet."). Debtors make the same frivolous, irrational, and unintelligible arguments here. Debtors' Motion must be denied because it does not request any remedy that this Court has the authority to grant.

Understandably, "[p]eople are sometimes drawn into the sovereign-citizen [or pseudo-law] movement because it seems to offer a solution to their problems." Leslie R. Masterson, *"Sovereign Citizens": Fringe in the Courtroom*, AM. BANKR. INST. J., March 2011, at 1. "Some people believe with great fervor preposterous things that just happen to coincide with their self-interest. . . . The government may not prohibit the holding of these beliefs, but it may penalize people who act on them." Coleman v. C.I.R., 791 F.2d 68, 69 (7th Cir.1986); see also Thiel v. First Fed. Sav. & Loan Ass'n of Marion, 646 F. Supp. 592, 597 (N.D. Ind. 1986) ("[Plaintiffs,] along with all other Americans[,] are free to hold whatever economic or political views they so choose. With this freedom, however, comes the responsibility to express these views appropriately. It is difficult to imagine a more irresponsible forum for the plaintiffs to express their particular economic views than this court."). Hope and belief, however, in a seemingly magic way to "discharge" their financial problems without having to face the long-term consequences of their financial decisions is not reality and has never been part of the legal system. Bankruptcy and

its automatic stay are only open to debtors filing petitions in good faith with the aim of repaying creditors to the extent possible. <u>Vongermeten v. United States Tr.</u>, 2023 WL 4685858 (E.D. Wis. July 21, 2023) ("Sovereign citizens have the same rights to access the federal courts as anyone else. . . [b]ut the lawsuits they file are not entitled to any special leeway."). It is not a system that allows Debtors to avoid all responsibility for the debts they incurred by issuing fictitious "bonds" that have no value to magically free them from the obligations to repay that which they freely undertook.

## II. CONCLUSION/ORDER

Because the Debtors have provided no legally recognized defense, the Court grants MWO's Motion for Relief from Stay (Doc. 26), denies Debtors' Motion for Evidentiary Hearing (Doc. 99), denies Debtors' Motion to Acknowledge Title 48 CFR International Commercial Affidavit Presented as Letter of Rogatory (Doc. 77), and quashes Debtors' Subpoena Request as moot.

Ordered:

                                    Thad J. Collins
                                    Chief Bankruptcy Judge

August 2, 2024